## 56048. STENHOUSE v. WINN DIXIE STORES, INC.

QUILLIAN, Presiding Judge.

The plaintiff brought an action for damages resulting from injuries she received when she tripped over a pole in defendant's store. The defendant moved for summary judgment in its favor, which motion was granted. This appeal followed.

The complaint alleged that the defendant corporation operates a grocery store and solicits patronage for the purchase of food products; that the plaintiff was an invitee on the premises. The defendant was alleged to be negligent in the following particulars: that the defendant had a duty under Code § 105-401 to exercise ordinary care in keeping the premises and approaches safe for the protection of its invitees; that the defendant breached this duty by permanently affixing a metal pole approximately 2-1/4 inches in diameter and 28-1/2 inches high at the corner of its frozen food counter; that the defendant knew, or should have known, that the metal pole was 5-1/2 inches shorter than the frozen food counter and was dangerous in that it was concealed from an invitee's view when shopping along the counter; that the defendant maintained the frozen food counter and placed food products therein to induce invitees to look into the counter as they walked along the corridor and that the defendant knew, or should have known, that an invitee's

attention would be distracted by the products displayed. It was further alleged that defendant should have apprehended that the placement of the pole would probably, according to ordinary and usual experience, cause injury; that the plaintiff was shopping along the frozen food counter, looking at and having her attention absorbed in the products displayed and was thus distracted from the floor in front of her as she walked, when her foot struck the metal pole and she was thrown violently to the floor and injured.

The defendant, on motion for summary judgment, introduced photographs which showed the pole was not in any way concealed but was located at the corner of the frozen food compartment and within inches of it. The pole was, as described in the complaint, approximately 5 inches below the top of the frozen food compartment. The plaintiff, by deposition, testified she was shopping, looking into the frozen food compartment and walking alongside it when she struck the pole, tripped and fell. *Held:*

In our consideration of this case we are confronted with two lines of cases which are not readily distinguishable. They may be categorized under the "plain view" doctrine and the "distraction" rationale. Both are exemplified by cases in 49 Georgia Appeals: *National Bellas-Hess Co. v. Patrick,* 49 Ga. App. 280 (175 SE 255), "plain view" and *Mason v. Frankel,* 49 Ga. App. 145 (174 SE 546), "distraction."

A comprehensive discussion of the basis for the "plain view" doctrine is found in *Herschel McDaniel Funeral Home v. Hines,* 124 Ga. App. 47, 49 (183 SE2d 7). There, quoting from *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170, 179 (138 SE2d 77), it was pointed out: "Warnings of a condition which are or should be obvious are not required. 'Of what avail is it to post a sign on steps saying to one who approaches "This is a flight of steps," or on a brick wall saying "Here is a brick wall," or on a telephone pole saying "Beware of this, it is a pole?" ' " The doctrine itself is that one is under a duty to look where he is walking and to see large objects in plain view which are at a location where they are customarily placed and expected to be; not performing this duty may amount to a

failure to exercise ordinary care for one's safety as would bar a recovery for resulting injuries. *McMullan v. Kroger Co.,* 84 Ga. App. 195 (65 SE2d 420); *Moore v. Kroger Co.,* 87 Ga. App. 581 (74 SE2d 481). In *Tinley v. F. W. Woolworth Co.,* 70 Ga. App. 390, 394 (28 SE2d 322) it was stated with regard to a plaintiff who struck a platform scale: "If she did not look where she was going, and the scales were clearly visible, and could easily have been seen by anyone who did look, she could not recover."

A thorough analysis of the "distraction" theory is found in *Redding v. Sinclair Refining Co.,* 105 Ga. App. 375, 378 (124 SE2d 688) which explains: "The doctrine that a plaintiff may be excused from the otherwise required degree of care because of circumstances creating an emergency situation of peril is well recognized . . . The doctrine is further broadened to cover situations where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur."

The *Redding* case, 105 Ga. App. 375, supra, delineates between those cases which allow recovery where there is a distraction and those which deny recovery. It was there held: "One valid line of distinction existing in the so-called 'distraction' cases concerns the cause of the distraction. Where the distraction is self-induced the plaintiff can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence. Where the distraction comes from without, and is of such nature as naturally to divert the plaintiff, and also of such nature that the defendant might naturally have anticipated it, the result is different." (Pp. 378, 379). Accord, *Glover v. City Council of Augusta,* 83 Ga. pp. 314, 316 (63 SE2d 422); *Miller v. Bart,* 90 Ga. App. 755, 758 (84 SE2d 127); *King Hardware Co. v. Teplis,* 91 Ga. App. 13 (84 SE2d 686); *Big Apple Super Market v. Briggs,* 102 Ga. App. 11 (115 SE2d 385); *J. C. Penney Co. v. Knight,* 119 Ga. App. 70 (166 SE2d 434).

With these principles in mind we now turn to the instant case. Here the distraction can not be classified, as

a matter of law, as self-induced; for, clearly, the defendant by its display encouraged viewing and closer examination of the contents. Whether the defendant should have anticipated that placement of the pole in such proximity to the frozen food counter would be ,dangerous to customers of the store who were preoccupied with the display would be an issue of fact.

The frozen food compartment is so fashioned that in order to thoroughly view the contents one must approach and stand beside the compartment and then look down into it. Whether, while so engaged, a person should be expected to see an iron pole adjacent to the corner of the counter and avoid it is for a jury and should not be determined as a matter of law. *Ellington v. Tolar Const. Co.,* 237 Ga. 235 (227 SE2d 336); *Burnham v. Mize,* 141 Ga. App. 203 (233 SE2d 49).

It was error to grant summary judgment for the defendant.

*Judgment reversed. Webb and McMurray, JJ., concur.*

ARGUED JUNE 8, 1978 — DECIDED SEPTEMBER 11, 1978— REHEARING DENIED OCTOBER 12, 1978 —

*Howard, Gilliland & Van Houten, T. Cole Van Houten,* for appellant.

*Swift, Currie, McGhee & Hiers, W. Wray Eckl, Steve Miller,* for appellee.